## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY ANTHONY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Civil Action No. 17-1249 (ABJ) |
| | ) |
| INTERNATIONAL ASSOCIATION OF | ) |
| MACHINISTS AND AEROSPACE | ) |
| WORKERS DISTRICT LODGE 1, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Gary Anthony brought this action against defendants District Lodge 1, a union affiliated with the International Association of Machinists and Aerospace Workers, and the International Association of Machinists and Aerospace Workers National Pension Fund (the "Fund"). Compl. [Dkt. # 1] at 1–2. He alleges that defendants violated the terms of the Plan and breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, when they failed to include him as a participant under the Plan and denied him benefits. *Id.* Specifically, in Count I, plaintiff alleges that defendants violated the terms of the Plan by denying him eligibility to participate in the Fund as directed by the "documents and instruments governing the Plan." Compl. ¶¶ 13–16. In Count II, he alleges that defendants owed him a fiduciary duty under ERISA to "observe and follow the governing terms" of the Plan, and that they breached that duty. *Id.* ¶¶ 17–21.

On August 24, 2017, District Lodge 1 moved to dismiss both counts pursuant to Federal Rule of Civil Procedure 12(b)(6). It argued that plaintiff failed to allege sufficient facts to establish that District Lodge 1 is a fiduciary under ERISA. *See* Def.'s Mot. to Dismiss & Supporting Mem.

of Law [Dkt. # 11] at 3–5. On November 6, 2017, the Court granted District Lodge 1's motion to dismiss Count II, because fiduciary status was a requirement for that count, but denied the motion to dismiss Count 1, because fiduciary status was not a requirement for that count. *Anthony v. Int'l Ass. Of Machinists & Aerospace Workers District Lodge 1*, 296 F. Supp. 3d 92, 96–98 (D.D.C. 2017). Thus, plaintiff's ERISA claim for violation of the Plan proceeded against District Lodge 1.

On August 15, 2018, District Lodge 1 moved for summary judgment on Count I, arguing that the Trustees of the Fund had sole discretion to make eligibility determinations, and therefore District Lodge 1 could not have violated the Plan when plaintiff was found to be ineligible to participate. *See* District Lodge 1's Mot. for Summ. J. [Dkt. # 28] ("District Lodge 1's Mot."); District Lodge 1's Mem. of P. & A. in Supp. of its Mot. [Dkt. # 28-1] ("District Lodge 1's Mem."). That same day, the Fund moved for summary judgment on Counts I and II, arguing that the Trustees' decision to deny eligibility to plaintiff was reasonable and therefore entitled to deference, and that plaintiff could not pursue Count II because the remedies requested were duplicative of Count I. *See* Fund's Mot. for Summ. J. [Dkt. # 27] ("Fund's Mot."). Plaintiff filed a cross-motion for summary judgment on September 28, 2018 arguing that the Fund's decision was not based on substantial evidence and was therefore unreasonable. Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. [Dkt. # 29] ("Pl.'s Mem.") at 6–9.

Based upon the parties' briefs, the evidentiary record, and the relevant law, the Court will grant the Fund's motion for summary judgment, because the Fund's decision to deny eligibility to plaintiff was reasonable, and plaintiff cannot pursue duplicative remedies under § 1132(a)(3). The Court will also grant District Lodge 1's motion for summary judgment because the determination to deny eligibility was solely within the Trust's discretion.

# BACKGROUND

## I.     The Parties and Relevant Contracts

Defendant District Lodge 1 is a union affiliated with the International Association of Machinists and Aerospace Workers ("IAM"). Pl.'s Statement of Facts in Supp. of Pl.'s Mot. [Dkt. # 29] ("Pl.'s SOF") ¶ 2; Fund's Statement of Facts in Supp. of Fund's Mot. [Dkt. # 27-1] ("Fund's SOF") ¶ 11. Plaintiff was employed as an "Organizer" by District Lodge 1 from May 2004 until January 2012, when he became a "Grand Lodge Representative," a position he continues to hold. Pl.'s SOF ¶ 1; Fund's SOF ¶ 21. Defendant IAM National Pension Fund (the "Fund") is a multi-employer defined benefit pension plan, and District Lodge 1 is a "Contributing Employer" to the Fund. Pl.'s SOF ¶ 2; Fund's SOF ¶ 11.

The Fund is established and maintained pursuant to its Amended and Restated Trust Agreement ("Trust Agreement"). AR550–88[1]; *see also* Fund's SOF ¶ 1. The Trust Agreement allows the Trustees to "allocate fiduciary responsibilities among the Trustees, or to committees of the Trustees." AR560. Pursuant to this provision, the Trustees established an Appeals Committee which has been allocated the responsibility to "[r]eview and make decisions on all participant appeals submitted to the Fund," among other things. AR731–32.

The Fund is governed by a document referred to as the Plan, which details the terms and conditions of the Fund. *See* AR409. An individual's right to a benefit payable by the Fund depends on whether the individual is a Participant, defined in the Plan as a "Covered Employee who meets the requirements for participation in this Plan . . . ." AR602. The Plan defines "Covered Employee" as "a person employed in Covered Employment." AR597. "Covered Employment,"

---

1       Citations to the Administrative Record submitted by the Fund [Dkt. # 26], will be abbreviated to AR. The pages cited correspond to the last three digits of the Bates Stamp on the document.

in relevant part, is defined as "employment in a job classification for which employer contributions are required to this Plan by a written agreement between the Trustees and a Contributing Lodge." *Id.*

The Plan also establishes the scope of the Trustees' authority:

Trustees have the sole and absolute authority, in [their] discretion, to interpret this Plan and to determine eligibility for benefits under this Plan. As part of their discretionary powers, the Trustees shall be the sole judge of: (a) the standard of proof required in any case; (b) the application and interpretation of this Plan; (c) the amount of or entitlement to a pension; and (d) the crediting of Future or Past Service.

AR707. The decisions of the Trustees "with respect to any exercise of this discretion made in good faith shall be final and binding on the parties." *Id.*

District Lodge 1 and the Trustees of the IAM National Pension Fund executed a series of written Participation Agreements, which governed the union's participation in the Plan. Fund's SOF ¶ 11; Pl.'s SOF ¶ 3. During the time plaintiff was employed as an Organizer, from 2004 to 2012, there were a number of Participation Agreements executed.[2] *See* AR41–43; AR47–49; AR56–58; AR80–82; AR215–20. All of these agreements required District Lodge 1 to "provide coverage under the National Pension Plan for all of its employees, except those employees in a bargaining unit which has negotiated a Collective Bargaining Agreement." *See* AR41; AR47; AR56; AR80; AR215.

## II.    Plaintiff's Claim

On or about April 5, 2016, plaintiff contacted the Fund because no contributions were being submitted on his behalf by District Lodge 1 to the Fund, and he believed that contributions should

---

2    Plaintiff asserts there were four agreements, *see* Pl.'s Mem. at 2–3, and the Fund asserts that there were two agreements. Fund's Mot. at 3. Since these agreements were identical, and the parties do not dispute that fact, the exact number of agreements is irrelevant.

have been made.  AR10.  After looking into the matter, the Fund notified plaintiff on September 13, 2016 that he was not a participant in the IAM National Pension Fund or National Pension Plan. AR174.  On October 21, 2016, plaintiff requested an appeal of that determination.  AR175.  He was told by the Fund's Executive Director, Rick Tierney, that his appeal would be heard at the Appeals Committee meeting on December 15, 2016.  AR180; AR202–06.

That December, the Appeals Committee decided that it needed additional information before it could render a decision.  *See* AR239 (adopting a motion to defer plaintiff's appeal pending additional research).  On December 20, 2016, the Fund notified plaintiff of its decision to defer determination pending additional research, and informed plaintiff that it has "referred this matter to District Lodge 1."  AR240.  The purpose of the referral was to ascertain District Lodge 1's understanding of what job classifications it intended to cover as a Contributing Employer to the Fund under the Participation Agreement.  *Id.*

To that end, the Committee reached out to Anthony Armideo, the Directing Business Representative of District Lodge 1.  AR242–43.  It posed four questions:

1. What job classifications did District Lodge 1 intend to contribute on behalf of as a Contributing Employer during its time as a Contributing Employer to the Fund, in accordance with the attached Participation Agreement?

2. What job classifications of employees at District Lodge 1 were non-collectively bargained employees of District Lodge 1 during its time as a Contributing Employer to the Fund?

3. Were any job classifications at District Lodge 1 not employees of District Lodge 1 during its time as a Contributing Employer to the Fund?  For example, were any persons or job classifications brought out to District Lodge 1 on lost time?  Or were certain job classifications employees of another organization, but District 1 served a pass through for the purpose of pay?

4. Please provide any documents that assist in answering these questions, including but not limited to meeting minutes, notes, letters or email correspondence, Lodge 1 records including payroll records, and the like.

AR 242.

Armideo responded on January 6, 2017, stating that District Lodge 1 never did, and did not then, intend to contribute to the Fund on behalf of the District Lodge 1 Organizer position. AR258–64. In coming to this conclusion, he examined the history of the Organizer position, prior and current Participation Agreements, past meeting minute records, and payroll audit records of District Lodge 1. *Id.* All of these records were attached to his response and submitted to the Appeals Committee for consideration. *Id.* at 265–312.

On January 26, 2017, the Committee met again to consider plaintiff's appeal, and based upon the information presented and the supporting documentation attached to Armideo's letter, the Committee voted to deny plaintiff's appeal. AR316. Plaintiff was notified of the decision on January 31, 2017. Specifically, Tierney wrote:

> In support of its position, District Lodge 1 provided District Lodge meeting minutes and various motions dating back to 1978. Those documents evidence that the positions for which District Lodge 1 intended to contribute extended only to Business Representatives (*alternatively described as Business Agents*) and the Secretary. Those documents also reflect that the Organizer position was never included among the class of employees for which contributions were intended to be made – whether during, or after your tenure as the District Organizer. District Lodge 1 also provided associated participation agreements. To the extent that the participation agreements include language suggesting that contributions were to be made for all employees other than those in a bargaining unit which has negotiated other pension benefits, there are factors that militate against a strict reading of that provision.
>
> First, the [P]articipation Agreement is a boilerplate agreement that was not drafted by District Lodge l. It is a form agreement that is provided to contributing employers such as District Lodge 1. Since District Lodge 1 did not draft any of the participation agreements, it follows that the agreements should not be construed against it. Moreover, the documents illustrate that District Lodge 1 signed separate Participation Agreements for the Business Representative position and the Secretary position. Had District Lodge 1 intended for the "*all employees*" language to apply to it, it would not have utilized separate participation agreements for the business representative and the office secretary positions. One agreement for all covered positions would have sufficed.

Additionally, the documents do reflect your attendance in at least some of the Lodge meetings where the IAM National pension plan was discussed, including the pension rate for the Business Representative position. Finally, District Lodge 1 presented two payroll audit reports dated July 10, 2007 *(auditing the period of January 2004 through December 2006)* and May 23, 2014 *(auditing the period of January 2011 through December 2013)*. Both reports found no discrepancies for the audit periods, including audit periods [when] you were employed as the District Lodge 1 organizer. You have not presented any documentary evidence such as an employment offer letter or employment agreement that commits District Lodge 1 to provide a pension through the Fund. In conclusion, none of the documentary evidence presented specifically and explicitly indicates that the Organizer position was intended by District Lodge 1 to be included in positions for which contributions to the Fund were to be made.

AR317–18 (emphasis in original).

On June 26, 2017, plaintiff filed a complaint in this Court against the Fund and District Lodge 1 asserting ERISA violations and requesting recovery of his benefits. Compl. ¶¶ 13–21.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable

of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) (alteration in original), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

I. **The Court will grant the Fund's motion for summary judgment on Count I because its determination that plaintiff was ineligible to participate in the Fund was reasonable and entitled to deference.**

A. **The appropriate standard of review for plaintiff's eligibility determination is the deferential standard.**

As a threshold matter, the Court must determine what standard of review applies to the Fund's benefits determination in this case. Section 502(a)(1)(B) of ERISA provides that a participant or beneficiary[3] of a covered plan may bring an action "to recover benefits due to him

---

3       While plaintiff is not technically a participant or beneficiary of the plan, he is permitted to bring an action under this statute claiming that he should be considered a participant. The Supreme Court held that the term "participant" is "naturally read to mean either 'employees in, or reasonable expected to be in, currently covered employment.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989).

8

under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that courts should apply a *de novo* standard – instead of the more deferential arbitrary and capricious or abuse of discretion standard – to a benefits determination under ERISA "unless the plan provides to the contrary." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008), citing *Firestone*, 489 U.S. at 115. A plan provides to the contrary when it grants its "administrator or fiduciary discretionary authority to determine eligibility for benefits." *Id.*, quoting *Firestone,* 489 U.S. at 115 (internal quotation marks omitted). Under those circumstances, "[t]rust principles make a deferential standard of review appropriate." *Firestone*, 489 U.S. at 111; *cf. Fitts v. Fed. Nat'l Mortgage Ass'n*, 236 F.3d 1, 5 (D.C. Cir. 2001) (deciding when *Firestone*'s exception applies).

The Plan in this case provides:

> The Trustees have the sole and absolute authority, in its discretion, to interpret this Plan and to determine eligibility for benefits under this Plan. As part of their discretionary powers, the Trustees shall be the sole judge of: (a) the standard of proof required in any case; (b) the application and interpretation of this Plan; (c) the amount of or entitlement to a pension; and (d) the crediting of Future or Past Service.

AR707. And, under the Trust Agreement, the Trustees are empowered "[t]o establish, interpret, and administer the Plan on behalf of the Employees and their beneficiaries" and "[t]o exercise their discretionary authority to make all determinations concerning matters of benefit coverage and eligibility, type, amount, and duration, including interpreting ambiguous provisions of the Plan and Trust." AR561; AR566.

Plaintiff does not dispute the fact that the Plan contains language giving the Trustees absolute discretionary authority to determine eligibility to benefits under the Plan; nor does plaintiff dispute the Trustees' ability to delegate their responsibilities to a committee (as the

Trustees did in this case).[4]  Thus, the Court will apply a deferential standard,[5] rather than a *de novo* standard, to the Fund's decision – as announced by the Appeals Committee – denying plaintiff's eligibility for pension benefits.

### B. The Appeals Committee did not sub-delegate its authority to District Lodge 1 when it asked District Lodge 1 for information.

The Trust Agreement provides that the Trustees may delegate their responsibilities to a committee:

> The Trustees may allocate fiduciary responsibilities among the Trustees, or to committees of the Trustees, and they may delegate fiduciary duties to persons other than the Trustees and delegate Trustee responsibilities to investment managers as provided in this Restated Trust Agreement and in accordance with the requirements of ERISA.

AR560.  Here, the authority to determine eligibility was delegated to the Appeals Committee.

On December 20, 2016, after an initial meeting where the Committee determined that it needed more information to evaluate plaintiff's appeal, AR239, the Committee sent a letter to Anthony Armideo of District Lodge 1 requesting additional information to ascertain its intention

---

4     Rather, plaintiff seems to be making two arguments with regards to the Trustee's authority: First, he argues that because the Participation Agreements have clear language covering "all employees," the use of extrinsic evidence outside this contract was unreasonable and as such, the determination by the Appeals Committee was arbitrary and capricious.  Pl.'s Mem. at 6–9.  Second, plaintiff argues that the Appeals Committee improperly delegated its responsibility to determine his eligibility for benefits to District Lodge 1.  *Id.* at 7.  These arguments will be addressed in more detail below.

5     The standard to be applied in cases where a fiduciary has been given discretionary authority has been "variously described by the [Supreme] Court as 'arbitrary and capricious' or 'abuse of discretion,' but regardless of how it is phrased, the standard to be applied 'is plainly deferential.'"  *James v. Int'l Painters and Allied Trades Indus. Pension Plan*, 710 F. Supp. 2d 16, 23 (D.D.C. 2010), quoting *Wagener v. SBC Pension Benefit Plan–Non–Bargained Program*, 407 F.3d 395, 402 (D.C. Cir. 2005); *see also Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992) ("The distinction, if any, between 'arbitrary and capricious review' and review for 'abuse of discretion' is subtle . . . we are satisfied, there is no need to adopt one phrase and avoid the other.").

as to who would be covered under the Participation Agreements. AR240. Plaintiff takes the position that the request for information was an unauthorized sub-delegation of the powers allocated to the Appeals Committee. Pl.'s Mem. at 7. The Fund maintains that it did not transfer its authority to the union; rather, it sought the input from District Lodge 1 because it needed additional information, and then it evaluated the information provided and came to its own final decision. Fund's Reply in Supp. of Mot. for Summ. J. [Dkt. # 33] ("Fund's Reply") at 4–5.

The Court agrees that no sub-delegation occurred. In responding to the Committee's letter, Armideo provided a number of documents and responses to questions posed by the Appeals Committee. AR258–312. On January 26, 2017, the Appeals Committee convened a new meeting at which they considered plaintiff's appeal. AR313. According to the contemporaneous records, at that meeting, the Fund's Executive Director "reviewed the facts, including the material provided to the Committee by District Lodge No. 1, with the committee. After discussion, [a] motion was made, seconded and adopted to deny Mr. Anthony's appeal." AR316.

After the decision was made, the Fund's Executive Director, Rick Tierney, advised plaintiff that the Appeals Committee had denied his appeal and did not consider him an eligible participant in the Fund. AR317–19. Tierney explained that the Committee reviewed the documents submitted by District Lodge 1, and it found that they showed that District Lodge 1 did not intend to include Organizers as a job classification covered by the Participation Agreements. *See* AR317–18. The Committee also considered the fact that plaintiff did "not present[] any documentary evidence such as an employment offer letter or employment agreement that commits District Lodge 1 to provide a pension through the Fund." AR318. The Appeals Committee did not simply adopt the District Lodge 1's findings. Rather, the Committee reviewed the information provided

to it by District Lodge 1, evaluated the strength of the evidence, and determined that plaintiff was not entitled to coverage.

The Court finds that, by merely requesting information from District Lodge 1, the Committee did not delegate its authority to make a determination regarding plaintiff's eligibility. Indeed, it was prudent to request documentation and seek District Lodge 1's input to ascertain whether plaintiff was engaged in "Covered Employment," because the determination of which job classifications are covered depends on what the union intended when it executed the Participation Agreements.

Furthermore, the record reflects that District Lodge 1 did not view the request for information as a delegation of decisionmaking authority regarding plaintiff's eligibility. In submitting the information to the Fund, Armideo stated:

> I hope you agree that the information that I have provided by way of written text above, along with the accompanying attachments[,] support the position of the District Lodge, that the District Lodge Organizer is not now and never has been entitled to have IAMNPF contributions made by the District Lodge on their behalf.

AR263. Thus, District Lodge 1 plainly understood that the decision would be made by the Appeals Committee.

For these reasons, the Court finds there was no unauthorized sub-delegation of the Appeals Committee's power to interpret the Plan.

### C. It was reasonable for the Appeals Committee to examine extrinsic evidence to determine the meaning of the Participation Agreements.

The Plan in this case defines a "Participant" as a "Covered Employee who meets the requirements for participation in this Plan . . . ." AR602. The Plan defines "Covered Employee" as "a person employed in Covered Employment." AR597. And "Covered Employment," in relevant part, is defined as "employment in a job classification for which employer contributions

are required to this Plan by a written agreement between the Trustees and a Contributing Lodge." AR416; AR597. Because the definition of "Covered Employment" specifically references a separate written agreement, it is necessary to look outside of the Plan to interpret its terms. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) ("The words of a plan may speak clearly, but they may also leave gaps. And so a court must often 'look outside the plan's written language' to decide what an agreement means."), quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011).

The operative written agreements in this case are the Participation Agreements executed by the Fund and District Lodge 1.[6] And the phrase being interpreted by the Appeals Committee is found at paragraph 1:

> The undersigned Lodge wishes to become or continue to be a Contributing Lodge and to contribute to the I.A.M. National Pension Fund as a Contributing Employer to provide coverage under the National Pension Plan for *all its employees, except those employees in a bargaining unit which has negotiated a Collective Bargaining Agreement.*

AR47 (emphasis added).

Plaintiff's principal argument is that the Participation Agreements clearly state that District Lodge 1 will provide coverage under the Plan for "all its employees, except those in a bargaining unit which has negotiated a Collective Bargaining Agreement," and that since he is an employee

---

6       The parties disagree on whether the Participation Agreements can be considered part of the Plan. Plaintiff characterizes the Participation Agreements as plan-related documents. Pl.'s Mem. at 6, 8 (describing the relevant provision in the Participation Agreements as a term in the Plan); Pl.'s Reply in Supp. of Summ. J. [Dkt. # 39] ("Pl.'s Reply") at 3. The Fund argues that it is not interpreting the Plan when it interprets a provision of the Participation Agreement, although it recognizes that the Participation Agreements are referenced in the Plan (under the definition of Covered Employment). Fund's Reply at 2–3. The Fund argues that interpretation of the Participation Agreements informs eligibility for benefits under the Plan, and because the Trust Agreement confers to it "the sole and absolute authority, in its discretion, . . . to determine eligibility for benefits under this Plan," it is entitled to deference for its interpretation of the Participation Agreements. Fund's Reply at 3. The Court need not decide whether the Participation Agreements are part of the Plan – whether or not the Participation Agreements are part of the Plan, the Committee had to interpret them to make its determination.

who is not in a bargaining unit, he should have been covered.  Pl.'s Mem. at 6.  He maintains that because the Committee's interpretation is contrary to the plain language of the Participation Agreements, and the Committee used extrinsic evidence to support its interpretation, its decision is unreasonable and the Court should not afford it any deference.  Pl.'s Mem. at 7–9.  The Fund responds that the circumstances surrounding the Participation Agreements render the provision at issue vague, and the history and prior practice of District Lodge 1 show that District Lodge 1 never intended to provide coverage for plaintiff.  Fund's Reply at 5–7.  Thus, its evaluation of the issue was reasonable and is entitled to deference.  *Id.*

The Court rejects the Fund's contention that the "backdrop" of the Participation Agreements has made the meaning of the provision unclear.  Fund's Reply at 7.  Under the rules governing the construction of contracts, it is not the surrounding circumstances that render a provision vague; rather, "[a] contract is ambiguous when it or its provisions are reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings." *Potomac Elec. Power Co. v. Mirant Corp.*, 251 F. Supp. 2d 144, 148–49 (D.D.C. 2003), citing *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983).  And, extrinsic evidence may be used "only when the contract is ambiguous."  *Id.* at 150; *see Commonwealth Commc'ns, Inc. v. NLRB*, 312 F.3d 465, 468 (D.C. Cir. 2002) (holding that "[i]n the absence of ambiguity in [a] collective bargaining agreement . . . [courts] have no cause to examine extrinsic evidence of the parties' intent") (internal quotation marks and citation omitted); *Papago Tribal Util. Auth. v. FERC*, 723 F.2d 950, 955 (D.C. Cir. 1983) (holding that "in the absence of ambiguity[,] the intent of the parties

to a contract must be ascertained from the language thereof") (internal quotation marks and citation omitted).[7] Therefore, it is necessary to look at the text of the contract.

In looking at this provision in isolation, the phrase "all employees" is quite clear. But, the meaning of a contract is determined by looking at the entire contract, not just one provision. *See WMATA v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C. Cir. 1980) ("[T]he Court should construe the contract as a whole so as to give meaning to all of the express terms.") The Participation Agreements go on to state in paragraph 2:

> The I.A.M. Lodge shall contribute to the I.A.M. National Pension Fund, National Pension Plan for each hour/day or portion thereof for which *all employees in all job classifications covered by this Agreement are entitled to receive pay under this agreement* as follows : . . . .

AR47 (emphasis added).[8] By adding the qualifying phrase – "in all job classifications covered by this Agreement" – the phrase "all employees" is rendered ambiguous, because it is not clear from the terms of the contract which job classifications are covered by the Participation Agreements. Because this term of the contract is ambiguous, it was reasonable for the Committee to ascertain who District Lodge 1 intended to be covered by the Agreement by looking to extrinsic evidence, such as prior contracts, meeting minutes, and audit files.

---

7       In reviewing the Committee's interpretation of the Participation Agreements, the Court may use principles of contract law. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147–48 (explaining that the remedy provided for in § 1132(a)(1)(B) is designed "to protect contractually defined benefits" and recognizing the contract-law foundations of the law); *McCutchen*, 569 U.S. at 1548–49 (using "[o]rdinary principles of contract interpretation" to construe an ERISA plan).

8       The two provisions cited by the Court are in every Participation Agreement in effect during the time period that plaintiff is claiming he was entitled to coverage.

**D. The Appeals Committee's decision that plaintiff is not eligible to participate in the Fund was the result of a deliberate, principled, reasonable process and supported by substantial evidence.**

In reviewing the Appeals Committee's decision to deny eligibility to plaintiff under the deferential standard, the Court must consider whether that decision was reasonable. *See Block*, 952 F.2d at 1454. A court cannot overturn a decision that is reasonable, "even if an alternative decision also could have been considered reasonable." *Id.* at 1452 (internal quotation marks omitted); *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 48 (D.D.C. 2005) ("[A] deferential standard of review allows the plan administrator to reach a conclusion that may technically be incorrect so long as it is reasonably supported by the administrative record."). This means that the Trustees' decision should not be overturned if it is the result of a "deliberate, principled, reasonable process and if it is supported by substantial evidence," that is "more than a scintilla but less than preponderance." *Buford v. UNUM Life Ins. Co. of Am.*, 290 F. Supp. 2d 92, 100 (D.D.C. 2003) (internal quotation marks omitted), citing *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 341 F.3d 696, 701 (8th Cir. 2003). With these principles in mind, the Court must determine whether, "based on the record available to the administrator or fiduciary at the time the decision was made," the decision was reasonable and entitled to deference. *Crummett v. Metro. Life Ins. Co.*, No. 06–01450, 2007 WL 2071704, at *3 (D.D.C. July 16, 2007), citing *Block,* 952 F.2d at 1455.

The Fund asserts that it engaged in a deliberate, principled, and reasonable process that included review of all the documentation submitted by District Lodge 1 and discussions with the Appeals Committee. The Court agrees. The Appeals Committee considered plaintiff's request twice, first in December 2016 and then again in January 2017. At its first meeting, the Committee acted in a deliberate manner when it determined that it needed additional information before it

could render a decision. AR239. The Committee then requested additional information from District Lodge 1, and the union responded with over 50 pages of supporting documentation. AR258–312.

On January 26, 2017, the Appeals Committee met for a second time to discuss the appeal, and as noted above, the meeting minutes reflect that the Executive Director "reviewed the facts, including the material[s] provided to the Committee by District Lodge 1, with the Committee." AR316. The Committee Members discussed the evidence and voted to deny plaintiff's appeal. *Id*. The decision letter details a reasoned and principled determination, based on materials in the record and plaintiff's failure to supply documentation that would support an alternative conclusion. AR317–18.

In addition, the Court's review of the underlying materials confirms that the Fund's decision was based on substantial evidence. First, the Fund reviewed the history of the position. When the first Participation Agreement was executed in 1978, there was no position of "District Lodge Organizer" (the position that plaintiff held). AR258–59. The only positions at District Lodge 1 were the Secretary and the Business Representative. *Id*. At a meeting dated December 11, 1978, District Lodge 1 approved a motion that Business Representatives should be allowed to participate in the Fund. AR258; AR268. The Secretary was already participating in the Fund under a separate Participation Agreement. AR259. This supports the Fund's understanding that District Lodge 1, despite the language in the boilerplate Participation Agreement that "all employees" would be covered, did not intend to cover all employees, because a vote to cover a particular job classification would have been unnecessary. By virtue of this vote, all of the employees of District Lodge 1 at that time – the Business Representative and the Secretary – were

covered by the Participation Agreement. But there was no vote at any subsequent meeting to cover Organizers.

The Fund also reasoned that because District Lodge 1 did not draft the Participation Agreements – they were form agreements provided to contributing employers – the broad language in the Agreement could not be used against it. This is also reasonable given the fact that there is other language in the Agreements that is inapplicable to District Lodge 1. For example, the Participation Agreements exempts from coverage "employees in a bargaining unit which has negotiated a Collective Bargaining Agreement," but District Lodge 1 never had any employees in a bargaining unit – it only had the Business Representative, Secretary, and Organizer positions. AR261.

The record also shows the Organizer position was not consistently filled, and that no Organizer with District Lodge 1 ever had contributions made on his behalf to the Fund. The first District Lodge Organizer, Bill Wheeler, was hired in May of 1988. He worked at District Lodge 1 for two and a half years, and he did not have any contributions made to the fund on his behalf during that time. AR261. District Lodge 1 did not have another Organizer until plaintiff was hired in May 2004. AR261–62. When plaintiff left the position in 2012, District Lodge 1 hired Andy Powell, the current District Lodge Organizer. Powell does not currently have, and never had, any contributions made on his behalf to the Fund. AR262. In 2015, pursuant to an Apprentice Organizer program, Brent Coleman was hired by District Lodge 1 as an Apprentice Organizer. *Id.* District Lodge 1 has not made any contributions on his behalf either. *Id.* And District Lodge 1 informed the Fund that it was "never the practice, let alone the intent" to have Organizers be covered under the pension plan. *Id.*

The Fund also examined District Lodge 1 meeting minutes and the various motions made at those meetings dating back to 1978. The meeting minutes from May 1999, May 2002, September 2004, and April 2009 show that there were motions made concerning increasing contributions for the Business Representative or Secretary, but never for the Organizer. AR268; AR283; AR295; AR301. Those meeting minutes support the Fund's determination that District Lodge 1 never contributed on behalf of the Organizers, nor did it intend to. The Fund also noted that plaintiff attended some of the meetings where the contributions to the Fund were discussed with respect to the Business Representative position, but the minutes reflect no discussion of his position. AR300; AR302.

Furthermore, the Fund considered that for the Business Representative and the Secretary positions, District Lodge 1 executed and signed separate Participation Agreements. AR266; AR271; AR279; AR285; AR292; AR297. Plaintiff maintains that they were all the same agreement, and it is true that the text of all the agreements is the same. *See* Pl.'s Reply at 5. But in light of the individual documents executed for the Business Representative and Secretary positions, it was logical for the Fund to infer that if District Lodge 1 intended to cover the Business Organizer position, it would have executed another Participation Agreement for that job classification.

And finally, the Fund examined the payroll audit records submitted by District Lodge 1. A third-party audit company was hired by District Lodge 1 to review "whether contributions to the Trust Fund were being made in accord accordance with the collective bargaining agreement in

effect and with the Trust Agreement." AR309. The audit company found no underpayments or overpayments.[9] AR310–11.

The Court finds that the Appeals Committee's conclusion that District Lodge 1 did not intend to make contributions on behalf of Organizers is supported by the administrative record by substantial evidence and therefore must be upheld even if plaintiff's position would also be reasonable. *See Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 699 F. Supp. 2d 185, 203 (D.D.C. 2010) (finding that defendant's determination that plaintiff was not "totally disabled" was reasonable even if there was evidence to the contrary, because the judgment was supported by substantial evidence), citing *Hall v. Nat'l R.R. Passenger Corp.*, 559 F. Supp. 2d 38, 48 (D.D.C. 2008); *Mobley*, 405 F. Supp. 2d at 48. The record is devoid of any evidence that would support a contrary interpretation, such as a letter of employment to an Organizer detailing his status as a participant in the Fund or any emails or letters assuring plaintiff or any other Organizer of coverage under the Plan. AR318. Plaintiff argues that all the documentary evidence he needed to provide were the Participation Agreements and his own work history. Pl.'s Mem. at 9. But, as the Court

---

9       The Court notes that it does not find the audit records particularly convincing. Plaintiff argues that the Participation Agreements were not reviewed by the audit company, *see* AR310, and the review was limited to "looking for a mismatch between the contribution reports and the payroll records" so if an employee was left out of the system, like plaintiff, he was not in the "audit universe." Pl.'s Mem. at 8–9. The Fund in response argues that the audit company's letter provides that it would review the provisions of the collective bargaining agreements ("CBA") and compare the underlying payroll record to the Fund's contribution records. AR309. Here, District Lodge 1 does not have a CBA, and so the auditor would have to use the Participation Agreement to determine whether there had been any deficiencies in contributions. Fund's Reply at 11. The Fund further argues that an audit would be impossible without review of the Participation Agreements. *Id.* at 12. While defendant's argument is logical, there is no support for it in the record – the audit documents submitted do not list the Participation Agreements as a document reviewed. Nonetheless, the Court finds that there is other evidence from which the Fund reasonably drew its conclusion.

already found, the Participation Agreements were ambiguous, and it was necessary to consider extrinsic evidence to determine which job classifications were covered.

Thus, the Appeals Committee's denial was reasonable, and the Court will grant the Fund's motion for summary judgement on Count I.

## II.    The Court will grant the Fund's motion for summary judgment on Count II because plaintiff cannot bring a cause of action for breach of fiduciary duty under § 1132(a)(3) simply to recover benefits.

In Count II, plaintiff asserts that the Fund breached its fiduciary duties when it violated § 1104(a)(1)(D), which states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the plan."  Compl. ¶ 20.  Plaintiff alleges that "under the terms of the plan and the applicable Participation Agreements, defendant IAM National Pension Fund owed a fiduciary duty to plaintiff Anthony to observe and follow the governing terms both of the Plan as well as the participation agreements."  *Id.* ¶ 19.  Plaintiff brought this count pursuant to § 1132(a)(1)(B) and § 1132(a)(3).[10]  *Id.* ¶ 21.

Section 1132(a)(1)(B) states: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Section 1132(a)(3) states: "A civil action may be brought by a participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

---

10     These provisions are also the basis of plaintiff's first count.  Compl. ¶ 16.

In *Varity Corp. v. Howe*, the Supreme Court concluded that § 1132(a)(3) is a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." 516 U.S. 489, 515 (1996). The Court explained that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." *Id.*

The D.C. Circuit has not decided whether a plaintiff may simultaneously pursue a claim for denial of benefits under § 1132(a)(1)(B) and a claim for breach of fiduciary duty under § 1132(a)(3). However, "[c]ourts in this Circuit have generally followed the view of the majority of circuits that a breach of fiduciary claim under § 1132(a)(3) cannot stand when a plaintiff has an adequate remedy for her injuries under § 1132(a)(1)(B)." *Zalduondo v. Aetna Life Ins. Co.*, 845 F. Supp. 2d 146, 155 (D.D.C. 2012); *see also Clark v. Feder, Semo & Bard, P.C.*, 808 F. Supp. 2d 219, 226 (D.D.C. 2011) (holding that a plaintiff "may proceed only under § 1132(a)(1)(B) or § 1132(a)(3), not under both provisions"); *Kifafi v. Hilton Hotels Ret. Plan*, 616 F. Supp. 2d 7, 39 (D.D.C. 2009) (dismissing the plaintiff's breach of fiduciary duties claim on the grounds that "a plan participant cannot proceed with a breach of fiduciary duty claim under [§ 1132(a)(3)] when relief is available under other remedial sections of ERISA").

However, a plan participant may simultaneously bring claims under § 1132(a) (1)(B) and § 1132(a)(3) when § 1132(a)(1)(B) does not provide an adequate and complete remedy for the participant's injuries. *See England v. Marriott Int'l*, 764 F. Supp. 2d 761, 780 (D. Md. 2011) (allowing the plaintiff to pursue claims under both section 1132(a)(1)(B) and 1132(a)(3) because the remedy sought under section 1132(a)(3) – the reformation of the terms of the benefit awards – was not available under section 1132(a)(1)(B)).

Plaintiff argues that his claim is not one for benefits, but for coverage, and so the cases above are not applicable because they involved claims for benefits. Pl.'s Mem. at 9–10. But plaintiff cites no case law supporting this distinction, nor does he explain how this distinction is meaningful. Plaintiff's complaint states that he "seeks to recover wages and benefits." Compl. ¶ 16. Additionally, plaintiff is requesting coverage so that he can "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Thus, the Court finds this distinction is irrelevant, and the case law above is informative.

Plaintiff also argues that there is a need for injunctive relief for breach of fiduciary duty separate from his benefits claim: "[T]he Fund needs to be enjoined from its unlawful delegation of plan functions to the employer, and must be enjoined to ensure that the employer makes the restorative contributions required." Pl.'s Mem. at 10. Determination of whether equitable relief is appropriate depends on whether "Congress elsewhere provided adequate relief for a beneficiary's injury." *Varity*, 516 U.S. at 515.

Here, plaintiff has an avenue for adequate relief under § 1132(a)(1)(B) to recover his benefits, because he would have been made whole if he had prevailed on his claim in Count I. His request for injunctive relief is simply a means to obtain the same relief, and he had full opportunity to air his concerns related to the so-called "unlawful delegation" in connection with his legal claim in Count I. Therefore, he cannot maintain what is essentially a duplicative action for breach of fiduciary duty against the Fund, and the Fund's motion for summary judgment on Count II will be granted.

### III. The Court will grant District Lodge 1's motion for summary judgment on Count I.

Defendant District Lodge 1 has one claim pending against it: plaintiff claims that District Lodge 1 failed to make contributions to the Fund on Plaintiff's behalf contrary to the Fund's plan

document, and therefore District Lodge 1 breached its fiduciary obligations to plaintiff, and its decision denying plaintiff's eligibility to the Plan was arbitrary and capricious pursuant to § 1132(a)(1)(B) and § 1132(a)(3). Compl. ¶¶ 13–16. District Lodge 1 has moved for summary judgment on this claim, arguing that it had no authority under the plan documents to determine eligibility to participate in the Fund, and so it cannot be held liable for an eligibility determination made by the Fund. District Lodge 1's Mem. at 5.

Plaintiff argues that when the Fund sought input from District Lodge 1, and District Lodge 1 provided that input, District Lodge 1 exercised control over the decision and can be held liable for it. Pl.'s Opp. to District Lodge's Mot. [Dkt. # 37] ("Pl.'s Opp.") at 2. But the Court has already found that the decision denying eligibility was made solely by the Appeals Committee – not District Lodge 1. *See* Section I.B *supra*. As another court in this district has found, "[m]ere influence over a fiduciary's decisions regarding a plan is not enough to constitute discretionary control, triggering ERISA liability." *Harris v. Koenig*, 602 F. Supp. 2d 39, 65 (D.D.C. 2009), quoting *Int'l Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 828 (D.D.C. 1996). Because District Lodge 1 made no decision, there is no basis to find that District Lodge 1 acted arbitrarily or capriciously. *See Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (finding that the entity that was responsible for denying plaintiff's request for increased benefits was the logical defendant for an action to recover benefits due under the terms of the plan); *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 916 (7th Cir. 2013) (finding that where the insurance company decided all eligibility questions, the insurer was a proper defendant in a suit for benefits due under § 1132(a)(1)(B)).

Furthermore, because the Court has found that the Fund acted reasonably when it determined that plaintiff was ineligible to participate in the Fund, District Lodge 1 was never

required to make payments on plaintiff's behalf.  Thus, when it did not make payments under the Participation Agreement, District Lodge 1 did not act "contrary to the documents and instruments governing the plan" in violation of ERISA, Compl. ¶ 15, and the claim against the union fails.

## CONCLUSION

For all of these reasons, the Court will grant the Fund's motion for summary judgment and District Lodge 1's motion for summary judgement, and it will deny plaintiff's cross-motion for summary judgment.

A separate order will issue.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE: March 29, 2019